Argued and submitted November 7, 1983, reversed and remanded January 18, 1984

## SEAL ROCK WATER DISTRICT,
*Appellant,*

*v.*

## CITY OF TOLEDO,
*Respondent.*

(44305; CA A27466)

675 P2d 186

Eugene K. Richardson, Newport, argued the cause for appellant. With him on the briefs was Richardson, Ouderkirk & Hollen, Newport.

DeMar L. Batchelor, Hillsboro, argued the cause for respondent. With him on the brief were Daniel Ousley,

Toledo, and Schwenn, Bradley, Batchelor, Brisbee and Stockton, Hillsboro.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

.

## WARDEN, J.

Plaintiff appeals from a judgment dismissing its complaint for declaratory and injunctive relief. The judgment was entered after the trial court granted defendant's motion to dismiss the complaint for lack of subject matter jurisdiction, and plaintiff declined to plead further. The dispositive issue is whether the complaint alleges a justiciable controversy. We conclude that it does and reverse and remand.

Plaintiff's complaint alleges that the parties entered into an agreement which requires defendant to deliver to plaintiff certain quantities of treated water. It further alleges that the agreement provides for an annual water rate adjustment based on defendant's "* * * actual experience of its cost to produce treated water exclusive of amortization of capital improvements."

The complaint then alleges:

"X.

"That on January 5, 1981, Defendant, acting by and through its Mayor and City Council, adopted resolution number 642 entitled 'A resolution amending resolution number 613 fixing rates and charges for water users,' that a true copy of said resolution is marked Exhibit 'C' attached hereto and by this reference incorporated herein the same as if set forth in full.

"XI.

"That by virtue of said resolution number 643, the rate to be paid by Plaintiff for water treated and delivered by Defendant was raised to $.58 per thousand gallons, effective February 1, 1981, that said rate represents an increase of 222.22% over the $.18 per thousand gallons the rate that was established in the agreement of August 30, 1976; that by virtue of said resolution number 642, the rate to be paid by other users of Defendant's water system was increased a lesser amount.

"XII.

"Plaintiff contends that Defendant's actual experience in its cost to produce treated water exclusive of amortization of capital improvements requires that capital outlays other than those described in paragraph 16, of the agreement of August 30, 1976, be excluded from consideration, and that transfers to non-water department funds and the expense of managing Defendant's Mill Creek watershed should be excluded from

consideration. Plaintiff further contends that Defendant's cost to operate its entire system is greater than its cost to produce treated water."

Plaintiff's supplemental complaint alleges further:

"III.

"That by virtue of said Resolution No. 674, the rate to be paid by plaintiff for water treated and delivered by defendant was raised to 80¢ per thousand gallons, effective February 1, 1982, that said rate represents an increase of 344.44% over the 18¢ per thousand gallons rate that was established in the agreement of August 30, 1976, between the parties; that by virtue of said Resolution No. 674, the rates to be paid by other users of defendant's water supply was increased a lesser amount.

"IV.

"That defendant's actual water department requirements for the 1980-81 fiscal year when compared to defendant's actual water department requirements for the 1976-77 fiscal year disclosed an increase of 59.48% when capital outlays and transfers to nonwater department funds are excluded. An increase of 59.48% in the 18¢ per thousand gallons water rate established in the agreement of August 30, 1976, would be a water rate of 28.7¢ per thousand gallons.

"V.

"That defendant's actual water department requirements for the 1981-82 fiscal year when compared to defendant's actual water department requirements for the 1976-77 fiscal year disclose an increase of 90.67% when capital outlay, transferred to nonwater department funds, and publication of newsletter are excluded. An increase of 90.67% in the 18¢ per thousand gallons water rate established in the agreement of August 10, 1976, would be a water rate of 34.32¢ per thousand gallons.

"* * * * *

"VII.

"That from February 1, 1981, through and including July 30, 1982, plaintiff has used and paid for, under protest, 132,960,013 [gallons] of defendant's treated water and has been overcharged in excess of $46,412.99."

Although defendant admitted paragraph X and the relevant part of paragraph XI, it denied paragraph XII of the complaint and paragraphs IV, V and VII of the supplemental

complaint. The trial court, in a memorandum opinion, concluded:

"There is no allegation and apparently no contention that the City contends differently than the plaintiff with respect to the foregoing. There is no allegation that the defendant is considering items in determining its cost which the plaintiff contends should not be included in determining the cost and no contention that the defendant is considering in determining its actual experience in the cost to deliver treated water anything which would not have been permitted under the contract. The plaintiff, in effect, says that the plaintiff does not know what the defendant is considering but they are unhappy because the rates have increased considerably over what they had expected that they would increase. The mere fact that the cost of producing water has increased at a considerable rate does not in any way indicate that the methods for determining the actual cost are in any way in error. Likewise, the percentage of increase over earlier budgets has actually nothing to do with determining the cost of producing treated water.

"* * * * *

"Since the plaintiff has merely alleged that the plaintiff contends certain things which the defendant should not consider in determining its actual experience in cost of producing treated water without, in any way, alleging that the defendant is either violating the contract or even that the defendant's contention is otherwise, there is no cause of action alleged and therefore there is no subject matter which the Court can take jurisdiction of and the defendant is entitled to a dismissal of the Complaint and Supplemental Complaint."

As a threshold matter, the trial court erred in holding that it lacked subject matter jurisdiction. Subject matter jurisdiction and justiciability are necessary but separate requirements in an action for declaratory judgment. *Brown v. Oregon State Bar*, 293 Or 446, 449-50, 648 P2d 1289 (1982). ORS 28.010 confers on courts of record the power to declare rights, status and other legal relations. A declaration made under the statute has the force and effect of a final judgment or decree. ORS 28.030 specifically provides that a contract may be construed before or after breach.

Although the trial court erred in denominating its concern "subject matter jurisdiction," its focus was on justiciability. The court stated in *Brown v. Oregon State Bar, supra:*

"* * * In order for a court to entertain an action for declaratory relief, the complaint must present a justiciable controversy. Justiciability is a vague standard but entails several definite considerations. A controversy is justiciable, as opposed to abstract, where there is an actual and substantial controversy between parties having adverse legal interests. *Cummings Constr. v. School Distr. No. 9,* 242 Or 106, 408 P2d 80 (1965). The controversy must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue. *Id.* A justiciable controversy results in specific relief through a binding decree as opposed to an advisory opinion which is binding on no one. *Id.* The court cannot exercise jurisdiction over a nonjusticiable controversy because in the absence of constitutional authority, the court cannot render advisory opinions. *Oregon Cty. Mfgs. Ass'n. v. White,* 159 Or 99, 109, 78 P2d 572, 576 (1938)." 293 Or at 449.

■ Defendant argues essentially that the complaint does not state a justiciable controversy, because it neither alleges that the defendant interprets the contract differently than does plaintiff nor does it allege that defendant breached the contract. We disagree. The complaint alleges that, in 1981, defendant increased the water rate charge to plaintiff 222.22% over the base contract rate, and the supplemental complaint alleges that, in 1982, defendant increased the rate 344.44% over the base contract rate. The complaints allege that during the same period of time, defendant's actual cost of operating its water department increased 59.48% and 90.67%, respectively. The supplemental complaint then contends that plaintiff has been overcharged in excess of $46,412.99, which has been paid under protest. Although the complaint does not expressly allege that defendant interprets the contract differently than does plaintiff, the allegation of overcharges implies that the parties construe the contract differently.

We stated in *Hupp v. Schumacher,* 29 Or App 9, 13, 562 P2d 217 (1977):

"[P]leadings in a declaratory judgment proceeding must be liberally construed and when pleadings reveal the existence of a real controversy by implicatiion rather than by express

averment, the trial court has power to render a declaratory ruling. * * *" (Citations omitted.)

We conclude that the pleadings sufficiently indicate the nature of the controversy and the adversary positions of the parties. Plaintiffs are entitled to a declaration of rights.

Reversed and remanded.